## J. L. Howard v. The State.

### No. 4332.   Decided February 21, 1917.

**1.—Murder—Continuance—Argument of Counsel.**

Where the judgment was reversed and the cause remanded for other cause than the objection to the argument of counsel and the overruling of the application for a continuance, the same need not be discussed.

**2.—Same—Practice on Appeal—Jury and Jury Law.**

Where the facts attending a homicide had nothing to do with the swearing of the jury, the evidence will not be discussed.

**3.—Same—Jury and Jury Law—Swearing Jury.**

Where, upon an appeal from a conviction of murder, it was conceded and appeared from the court's qualification of the bill of exceptions, that the jury who tried the case were not sworn when impaneled to try this particular case as provided by article 714, Code Criminal Procedure, but had only been sworn the first day of the week of the term of court during which the defendant was tried, as provided by article 5213, Revised Civil Statutes, the same was reversible error. Following Arthur v. State, 3 Texas Crim. App., 403, and other cases. Prendergast, Judge, dissenting.

**4.—Same—Waiver—Oath of Jury.**

Where the qualification of the judge to defendant's bill of exceptions does not show a waiver of the oath required by law under article 714, Code Criminal Procedure, or that defendant was requested to do so, or it was called to his attention by the court, this question does not arise; besides defendant could not waive trial by a jury in a felony case, and an unsworn jury is not a jury to try a felony case. Distinguishing Caldwell v. State, 12 Texas Crim. App., 302. Prendergast, Judge, dissenting.

**5.—Same—Statutes Construed—Swearing Jury—Presumption.**

Under article 938, Revised Code of Criminal Procedure, had the record on appeal remained silent as to the failure of the jury to be sworn under article 714, Revised Code Criminal Procedure, this court would presume that the jury was sworn, but this presumption is not conclusive where the judgment is attacked as provided by the statutes, and where the truth of the attack is conceded by the trial court, and the record on appeal, and it is shown that the jury were not sworn as required by law, the judgment is reversed and the cause remanded. Following Smith v. State, 1 Texas Crim. App., 408, and other cases. Prendergast, Judge, dissenting.

Appeal from the District Court of Henderson.   Tried below before the Hon. John S. Prince.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentnary.

The opinion states the case.

*W. R. Bishop,* for appellant.—Cited Stephens v. State, 33 Texas Crim. Rep., 101; Miller v. State, 91 S. W. Rep., 582.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder, his punishment being assessed at five years confinement in the penitentiary.

The questions with reference to the continuance and argument of prosecuting officer will not be discussed further than to say that upon another trial the attendance of the witnesses may be secured, and in regard to the argument, that will not occur again. We would feel inclined to reverse the case for these reasons, but under the view taken on the other question, those are not further mentioned.

As the facts attending the homicide had nothing to do with the swearing of the jury, the evidence will not be recited, nor discussed. They have no bearing on the question of swearing the jury.

The main question here discussed is, that the jury was not sworn specifically to try the case. This is shown by the court in his qualification to the bill of exceptions, and by jurymen who tried the case and is conceded. It seems the jurors were sworn the first day of the week as prescribed by the civil statutes, article 5213, but were not sworn when empaneled to try this particular case. The court in his qualification to the bill of exceptions states, in substance, that the jury was not otherwise sworn, and his attention was privately called to this fact by one of the jurors. The court informed this juror it was not necessary to swear them as a body as all the jurors had been sworn at the beginning of the week and such swearing was sufficient. We do not understand the trial court to be correct in his statement of the law. Article 714 of the Revised Code of Criminal Procedure thus reads:

"Oath to be administered to jurors.—When the jury has been selected, the following oath shall be administered to them by the court, or under its direction: 'You, and each of you, solemnly swear that in the case of the State of Texas against A. B., the defendant, you will a true verdict render according to the law and the evidence,·so help you God.'"

Article 5213 of the Civil Statutes does not meet the requirements of article 714, C. C. P. This statute, article 714, C. C. P., has been frequently before the court, and invariably it has been held that the jury must be sworn in the particular case as prescribed by the statute. Commencing with Arthur v. State, ·3 Texas, 403, followed by Bawcom v. State, 41 Texas, 189, it was held that the statutory oath must be administered; that even a different oath than that prescribed would not be sufficient. Judge Moore, writing the opinion for the Supreme Court in the Bawcom case, said:

"The record shows that a different oath was administered to the jury from that prescribed by law. This, as has been decided heretofore, is error, for which the judgment must be reversed. (Arthur v. State, 3 Texas, 403; Martin v. State, decided during present term.) Where it does not affirmatively appear from the record that a different oath from that prescribed has been administered, it will be presumed in favor of the regularity of the proceeding in the District Court, that the jury were properly sworn. But the oath administered in this case is set forth in the record, and no presumption can be indulged to impeach its verity."

In the same volume, at page 501, in the Edmondson case, Judge Gould, writing for the Supreme Court, said:

"We call attention, however, to one other irregularity, with the view of having its repetition guarded against. The record recites that the jury were 'sworn to well and truly try the issue joined between the State of Texas and Luke Edmondson.' This is not the oath required by law to be administered. If the record assumes to set forth the oath, it should do it correctly. It is sufficient, however, if it states that the jury were sworn 'according to law,' without attempting to set out the oath, and that, we think, is the better plan."

In Smith v. State, 1 Texas Crim. App., at page 408, it is said:

"The objection to the oath administered to the jury is well taken. The proper oath to be taken by the jury on the trial of a criminal case has been prescribed by statute. See Code of Cr. Pro., art. 563; Pasc. Dig., art. 3029. When the oath required has been prescribed by law, another oath will not answer the purpose intended.

"In Arthur v. State, 3 Texas, 403, it was held that, 'Where the Legislature has undertaken to prescribe the oath which shall be taken, it must be observed, and where the record shows that the statutory requirement has been disregarded, and the court has provided something else in its stead, it will be as if no oath had been administered. Any other oath than that prescribed is, in contemplation of law, no oath. And it is clear that the finding of a jury not under oath can not constitute a legal verdict upon which the court can proceed to give judgment.'

"No rule, it would seem, has been more invariably adhered to than that laid down in the opinion above quoted from—that, where the record shows that the oath prescribed by the statute has been disregarded, and some other oath has been substituted, the oath so substituted will, in felony cases, be regarded as no oath at all. Such has been the uniform decision, both before and since the adoption of the Code of Criminal Procedure. Martin v. State, 40 Texas, 19; Bawcom v. State, 41 Texas, 189; Morgan v. State, 42 Texas, 224; Burch v. State, 43 Texas, 376.

"These authorities, it is proper to observe, do not conflict with another class of cases where the record simply shows that the jury was sworn to try the case, but does not attempt to set out the oath; in which it is held that it will be presumed the proper oath had been administered."

In Leer v. State, 2 Texas Crim. App., 495, at page 496, Presiding Judge Ector said:

"The judgment in this case must be reversed because it appears from the record that another and different oath was administered to the jury than the one prescribed by law. Any other oath than the one prescribed is, in contemplation of law, no oath. If the judgment had recited that the jury were 'duly sworn,' or that the jury were 'sworn according to law,' it would be sufficient; the court would presume that the proper oath was administered to the jury. But the oath administered in this case is set forth in the record, and 'no presumption can be indulged to impeach its verity.'" Further quotation might be made from this case, but it is in line with cases already cited.

In Rippey v. State, 29 Texas Crim. App., 37, at page 43, Presiding Judge White of the Court of Appeals said: "In these latter cases a juror is not empaneled, that is, sworn as a juror to try the case, until the whole jury has been selected and sworn as a body. Code Crim. Proc., art. 657." This rule was followed also in Heskew v. State, 17 Texas Crim. App., 161, and in Slaughter v. State, 100 Ga., 327.

Again, a case directly in point was delivered by Judge Simkins in Stephens v. State, 33 Texas Crim. Rep., 101. The language there is as follows: "There is but one question in this case that need be considered: Was the jury sworn as required by law? The trial judge states that on Monday, the 15th of May, 1893, before this case was called for trial, when the jury for the week was being empaneled, the court administered to all the jurors who tried the case, the oath prescribed by article 3099 of the Revised Statutes for jurors in civil cases, and no other oath was administered to them; in other words, the jurors who were selected and tried this case were not sworn as required by article 657 of the Code of Criminal Procedure. (That article is now 714, C. C. P.) The clear intention of the Code is that a jury selected to try a defendant on a criminal charge shall be sworn in the specific case, and under the oath prescribed, and no other. Willson's Crim. Stats., sec. 2289. The oath testing them on each Monday is not sufficient. Then only can a jury be said to be 'empaneled in the case.' Rippey's case, 29 Texas Crim. App., 37. The oath administered on each Monday is not sufficient and has never been. In all cases less than capital, jurors are not empaneled until selected and sworn as a body, in the particular case. Rippey's case, supra; Heskew's case, 17 Texas Crim. App., 161; Ellison's case, 12 Texas Crim. App., 557. This is fatal to the conviction."

It would be more difficult to reconcile the action of the trial court with the prescribed statutory regulation and requirements and decisions quoted, and sustain this conviction because of a presumed waiver. The qualification of the judge does not show a waiver by defendant, nor does the court say he waived the necessary oath. He was not even requested so to do, nor was it even called to his attention by the court. We are cited, however, to the case of Caldwell v. State, 12 Texas Crim.

App., 302. That was a death penalty case. Judge Hurt delivered the opinion. That opinion shows, in substance, that the oath was not administered to each individual juror as selected. The statute provides this ought to be done, but that opinion discloses, and it is the basis of the opinion, that when the jurors had all been selected, the oath was administered to them as a body. Judge Hurt held that this was such an irregularity as would not require a reversal, but places it upon the ground that the jury was sworn to try that particular case. That jury was not an unsworn body of twelve men as in the present case. Conceding the correctness of Judge Hurt's opinion in the Caldwell case, it would not be analogous to this case, nor have any bearing upon it, because in that case the jury were sworn to try the accused in that case. The verdict was a verdict of a sworn jury. In the instant case, however, there was no pretense that an oath was administered to the jury who tried the defendant, and the court concedes and all the testimony showed it was not so administered.

It has been the law in Texas both by Constitution and statute, that an accused is entitled to a trial by a jury. It has not been held, so far as we have been able to discover, that a jury could possibly be a jury until it had been sworn to try the particular case. · It is not a trial by jury, for as Judge Simkins said, a jury can not be said to be empaneled until it has been sworn. The verdict in this case was by twelve men unsworn to try the issues between the defendant and the State. He was deprived of a constitutional as well as a statutory right. Such oath has been required in all the history of the jurisprudence of this country, and no man's life, liberty or property can be taken except by due process of law. A man tried by an unsworn jury can not be said to be tried according to the law of the land. The defendant, as provided by statute, can not waive trial by jury. If it be true that a jury is not a jury to try the case until sworn, as the authorities hold, then appellant was tried by a jury unsworn. But, as before stated, the statute says he can not waive a jury trial. His desire in the matter would not overturn the law. This is a question about which there has not been any serious discussion, because it is expressly stated, and under all the decisions held, that a defendant can not waive a trial by jury in a felony case.

We have another statute, article 938, Revised Code of Criminal Procedure, which says: "The Court of Criminal Appeals may affirm the judgment of the court below, or may reverse and remand for a new trial, or may reverse and dismiss the case, or may reform and correct the judgment, as the law and the nature of the case may require; but. in all cases, the court shall presume that the venue was proven in the court below; that the jury was properly empaneled and sworn; that the defendant was arraigned; that he pleaded to the indictment; that the charge of the court was certified by the judge, and filed by the clerk of the court before it was read to the jury, unless such matters were made an issue in the court below, and it affirmatively appears to the

contrary by a bill of exceptions, properly signed and allowed by the judge of the court below, or proven up by bystanders, as is now provided by law, and incorporated in the transcript as required by law." Had the record remained silent as to the failure of the jury to be sworn, this court, under the quoted statute, would presume that the jury was sworn. But whether the judgment recites the fact that the jury was sworn or not, it is subject to attack in the manner provided by statute, and the recitation in the judgment may be overcome by showing that such recitation is not true. Presumption is not conclusive, but it is expressly stated it shall not be conclusive and is subject to attack. It was successfully attacked in this case in the trial court. The truth of the attack is conceded by the court and proved by the statement under oath of every juror who tried the case, and not only is this true, but the court's attention was called to it at the beginning of the trial by one of the jurors who notified the judge that the jury had not been sworn. The court informed him that it was not necessary. Whatever may be thought as to the necessity of swearing a jury in the trial of a case, the law has decreed that the jury shall be sworn, and by a prescribed oath, and in the particular case it is not sufficient to administer the oath as required by the civil statutes in testing the qualification of jurors at the beginning of the week. That is not the oath required by the statute in the trial of a felony case. This has been the subject of many decisions and is settled. Quotations have already been made from some of these decisions, running back as far as the Third Texas Supreme Court Reports, all of which lay down the rule that the jury must be sworn as provided by the statute, and not only so, but where the judgment recites that a different form of oath was administered that is not sufficient, even where the jury is sworn in the particular case. This has been the unbroken rule in Texas since the decision of Arthur v. State, supra. We call attention to the fact that Judge Hurt, who wrote the opinion in the Caldwell case, supra, was on the bench when the Ellison case, supra, was delivered, and reported in the same volume as the Caldwell case, and that he was also a member of the court when the Stephens case, supra, was written. He was also a member of the court when the Rippey and Heskew cases, supra, were written. It seems not to have occurred to Judge Hurt at any time that the Caldwell case was in opposition to the long unbroken line of cases; in fact, could not well be antagonistic to those cases because in the Caldwell case the particular statutory oath was administered to the jurors as a body. Judge Hurt was not passing upon a question involved in the case where the jury was not sworn, but was passing upon a case in which the jury was sworn in accordance with the statute, but which jury had not been singly sworn in accordance with the terms of another article. The defendant in that case was tried by a sworn jury.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE (dissenting).—I am well aware that dissenting opinions are read by very few persons at any time, and that when written by me, they avail nothing at the time, yet when after the most thorough investigation and mature deliberation I see that a trivial and unimportant omission, which was clearly waived by the appellant at the time, the laws of my country are not declared and enforced and the substance is made to yield to the mere shadow, and a case is to be reversed whereby the guilty escapes the punishment the law prescribes and which he so justly deserves, I feel it my imperative duty to protest and place on record my earnest dissent.

In determining the question at issue in this case, I think it is of sufficient importance to state the testimony introduced on the trial and the conduct thereof and the result, for the purpose of showing that the evidence clearly authorized the jury to find appellant guilty of murder, and to show that he was acquitted of that offense by *this* jury, *sworn* only as it was. Besides, it is always necessary to know and see the surroundings in order to determine the materiality and bearing of the question raised. The question can not be correctly determined without this. I shall, therefore, succinctly state all these matters from the record.

Appellant was indicted and tried for the murder of Boss Robertson. The testimony unquestionably raised the issue and was amply sufficient to have sustained a verdict for murder. Manslaughter was also submitted, and the jury found him guilty of manslaughter only. This, under the very terms of the statute (art. 782, C. C. P.) was an express acquittal for murder, and, of course, appellant gladly avails himself of this. His sole defense was self-defense, from what he alone claimed was apparent danger. All the material facts were proved by uncontroverted testimony except those at the immediate time appellant shot and killed deceased. That he shot and killed him was not denied, but admitted, by appellant.

A large number of witnesses testified that appellant's general reputation was that of a peaceable and law-abiding man. The State in no way contested this. A large number of witnesses also testified that the general reputation of deceased was that of a violent and dangerous man and that he carried a pistol on his person. Appellant testified he knew all this about deceased before he killed him. However, the testimony further shows that while deceased lived in the same immediate neighborhood in which he was killed for many years, no one ever saw him have a pistol on his person, and he was never convicted for any such offense.

Several witnesses also testified for appellant that deceased had stated to them that he would not be arrested by appellant, and some swore he said he would kill him if appellant attempted to arrest him. These threats testified to covered a period from five or six years before the killing up to within a day or two thereof. The testimony of these witnesses was to the effect that these threats they testified to were directed

not only against appellant personally but also embraced any and all other officers who should undertake to arrest him. However, within the period of these alleged threats deceased had been arrested some two or three times and at least once, if not twice, by appellant himself, at which times he did not resist arrest, nor did he kill or attempt to kill the officer arresting him. It was testified to that a year or two before the killing a certain deputy sheriff in deceased's neighborhood had resigned to avoid trouble with deceased in case it became necessary for him to attempt to arrest him. The constable of the precinct where appellant and deceased lived, some months before the killing, had also resigned, expressly to avoid a difficulty with the deceased if he should attempt to arrest him; and appellant knew of both of these resignations and the cause therefor. The appellant had been appointed constable in the place of the one who had shortly before the killing resigned and was acting as such constable at the time he killed the deceased At the time he killed him he had a capias or warrant for the arrest of the deceased for a minor misdemeanor alleged to have been committed about a year or a little less before the killing. Deceased knew he had this capias for his arrest and had told different persons in substance, as they testified, that he would not be arrested by appellant under said capias, and that he would kill him if he attempted to arrest him thereunder; all of which was communicated to and known by appellant at the time he attempted to arrest him when he killed him.

The State's case was this: Mrs. Dalripple swore that before the killing "somebody cut Mr. Howard's (appellant's) mule's tail off and Mr. Howard said he believed Boss Robertson (deceased) did it, and if he knew he did, he would just hunt him up and shoot him like he would a yellow dog." George Gardner swore that Mr. Howard talked to him and said, "That Mr. Boss Robertson had cut his mule's tail off and he was going to get him, and he ought to be shot through the entrails and let die." (Appellant denied making these threats.)

Jim Burns swore that on the morning appellant killed deceased, deceased came by his store and told him he understood appellant had papers for him and that if he had he was going to make him take him to Athens—that he was not going to make bond. That just at this time he saw appellant coming towards them and that he called deceased's attention thereto. That deceased then left him, going meeting appellant, saying: "I am going down the road there, and if he goes to arrest me, I am going to run." That he, the witness, then watched appellant and deceased and saw the whole affair and the shooting of deceased by appellant. That deceased met appellant and passed him a little piece and "sorter turned around" with his side or face to appellant, when appellant shot him the first time. That deceased then wheeled around to run back the way he had gone with "his hands up over his head," and just as he was passing appellant on his return, appellant fired the second shot. "The last shot entered Boss Robertson's back, and he was something like four or five or six steps maybe

from Mr. Howard when that shot was fired. When the last shot was fired, Boss Robertson's hands were up over his head, and he fell with his hands over his head and lay that way."

All the uncontroverted testimony established that appellant shot deceased three times, and shot only three times; that the first shot struck deceased in the stomach, just above the navel, went around and came out of his right side. The second shot struck him a little below where the first did and ranged around and came out of his left side. Both of these shots were flesh wounds, and neither penetrated the cavity. The third and last shot struck him in the back, near the center thereof, just below the shoulder blades. This ball went in and was the shot that killed the deceased.

Jim Reece testified that he was in about 100 yards of the parties when the shooting occurred and that he was the first man to the body of deceased; that he got there just as quick after the shooting as he could run down there. When he got there deceased was lying flat on his stomach with his hands raised up over his head, his feet straightened out. That just before he got to the body of deceased he "kinder stopped," and the deceased called him to come on to him. That he asked him if he was hurt, and he replied, "Yes, he had shot him all to pieces." He asked him what he shot him for, and he replied: "For nothing in God's world, shot him down just like a dog."

C. C. Knott, pastor of the Baptist church, and it seems deceased's pastor, was called to see deceased before he died. He swore that deceased told him that when he met Mr. Howard, Howard went to shooting. "He said when he first shot he threw up his hands and told him wasn't any use of that, and he said: 'After the next shot, I broke to run and Mr. Howard shot me in the back. That shot is what is killing me.' "

Dr. Meyers, who was called to see deceased, swore: "He said: 'I met him down there in the road.' I said: 'Did you have any words?' He said: 'I didn't think of any trouble, didn't think he was going to shoot me. The first shot I throwed up my hands and said: "My God! Don't shoot me; I am not armed." He fired the second shot.' When the second shot was fired, then he (Boss Robertson) broke to run— said: 'I got six or eight feet and he hit me and he knocked me down and I couldn't run but I crawled to get away.' " The doctor further swore that deceased did not tell him where his hands were when he broke to run. "He said his hands were up when the second shot was fired."

Jim Rogers swore that he saw deceased soon after he was shot. That he met Howard coming from deceased when he was going to him and that Howard asked him to search Robertson's body for a pistol, and that he did so and found no pistol. It was established by the testimony that deceased had no pistol and no holster on when appellant shot him. Appellant's attorney, in arguing this case when submitted, stated that it was shown deceased had no pistol when appellant shot him. Rogers

further swore that he was about 150 yards from where the shooting occurred and got to deceased just as quick as he could walk down there and that deceased then told him that Mr. Howard shot him without any cause.

This cause had been tried once before. The State proved by Judge Prince, the presiding judge at both trials, that on the first trial appellant swore that he shot deceased in the back because he thought he was going to get a gun. Also the State proved by Mr. Osborne, one of the jurors on the previous trial, that Mr. Howard swore in substance on that trial that he shot deceased in the back because deceased was going to run and get a gun. Mr. Justice, the county attorney, swore that on the previous trial appellant swore that he shot the deceased in the back the last time because he thought he was going off to get a gun, or that he thought he might be going to get a gun. He stated it in another place thus: Appellant said: " 'I shot him in the back, running from me, because he was going after a gun,' or he thought he was going after a gun, one of the two."

Appellant's contention as to the immediate facts of the shooting was testified to by him alone.. He said, in substance, that when he met deceased on this occasion he spoke to him, "Good morning," and told him he had a bond he wanted him to fill. That he, appellant, was talking in a louder, more determined way, and as deceased was passing him said: "You hold on there and take this bond." That deceased told him in bad language what to do with the warrant- and "throwed" his hand back that way (towards his hip pocket) and he thought he was going to shoot him, and that appellant thereupon shot the deceased the first time. That deceased turned and started back towards the way he had come, and as he was passing him, threw his hands up as if to grab appellant, and he shot the second time, and while he said he didn't know that he shot him in the back the third time, he could not explain why it was he shot him in the back except, in substance, that he was so agitated he did't know how he was shooting the deceased, but that all the shots he fired he fired were in his own defense, and he thought and believed if he didn't shoot and kill the deceased that the deceased would shoot and kill him. He denied that deceased threw up his hands and told him that he was not armed, and denied that he told him not to shoot him again after he shot him the first time. He swore that he thought he saw deceased's pistol holster, a red looking thing, when he threw his hand back. "I didn't think that I saw his pistol. I thought his hand covered the pistol. I thought I could see the holster of the pistol." That all the shooting was done right together. On cross-examination, appellant swore: "Boss Robertson did not keep his hand in his hip pocket all the time he was running towards me. It was all done right now. A man can't see everything. I don't think that Boss Robertson had his hand in his hip pocket when I shot the last time. He had taken it out. He just come right at me like he was going to grab me,—had his hands up just like he was going to

grab me, in a grabbing position. He didn't have his hands in his hip pocket when he was coming towards me. He had his hand in his hip pocket when I shot the first shot, and I don't know whether he had his hand in his hip pocket when I shot the last shot or not. When I commenced shooting he throwed his hand right that away (to his hip pocket) and I commenced shooting. He just whirled right that away and come right towards me. When Boss Robertson run at me he had his hand up in a grabbing position, didn't have it in his hip pocket. I shot Boss Robertson the last time to keep him from killing me. I didn't have time to think of nothing else; I didn't know no more to do only to defend myself; I was fighting for my life."

A special venire was not called for by either party. Both waived a special venire, and agreed to make up a jury from the regular panel for the week, and this was done as provided by article 969, C. C. P., that is, the name of each juror was called as his name appeared on the list, he was tried and passed upon separately, but when accepted by both sides was not then individually sworn as required by article 698, C. C. P. It is certain that both appellant and his attorney knew this at the time, and in no way did they, or either of them, then request that the jurors should thus be individually sworn. Nor did they, or either of them, then complain that this was not done. When the twelve jurors who tried this case had each and all been thus selected, they then neither individually took the oath prescribed by said article 698, nor as a whole together did they take the oath prescribed by article 714. Appellant was present and saw and knew that oath was not then administered to the jury, and neither he nor his attorney then asked that this be done, nor did either then complain that this was not done. No juror was selected who was in any way objectionable to appellant.

Judge Davidson in his opinion herein time and again, in effect, says this jury was never sworn. The record plainly and positively shows the very reverse of this. The jurors made this affidavit "We, the jurors who tried the above entitled and numbered cause of the State of Texas v. J. L. Howard, do on our oaths solemnly swear that we were on the jury for the week of said District Court beginning on Monday, September 11, 1916; that on said Monday we were sworn in as jurors for the week, to try all cases that might be submitted to us for the week." Appellant's sworn motion for a new trial so alleges; his bill of exceptions stated: "In the above entitled and numbered cause and regard thereto the following proceedings were had, towit: there was no special venire demanded and the jury was selected from the jury for the week beginning September 11, 1916; on Monday, the 11th day of September, 1916, before this case was called for trial, when the jury for the week was being empaneled, the court administered to all the jurors for the week, including all the jurors who tried this case, the oath prescribed by article 5213 of the Revised Civil Statutes, for jurors in civil cases." And the judge in allowing this bill, which was accepted by appellant, so states. His qualification of this bill will be quoted below. It is

unnecessary to quote it here. All these documents further show, that neither the oath prescribed by said articles 698 nor 714 were administered to them at any time, except in the oath which was administered to them.

When the jury for the week was empaneled the day before this case was called for trial, this oath was administered to each and all of them, including everyone who was a juror on the trial of this cause, which is the oath prescribed by article 5213 of the Revised Civil Statutes, towit:

"You and each of you do solemnly swear that in all cases between parties which shall be to you submitted, you will a true verdict render according to the law as it may be given to you in charge by the court and the evidence that may be submitted to you under the rulings of the court, so help you God." No other oath was administered to this jury.

Our statute (art. 698, C. C. P.) requires that, when jurors are selected from a special venire, as each juror is selected, the following oath shall be administered to him: "You solemnly swear that in the case of the State of Texas against A. B., the defendant, you will a true verdict render according to the law and the evidence, so help you God."

And that, in the formation of a jury in other felony cases, when the whole jury has been selected (art. 714, C. C. P.) this oath shall be administered to the jury as a whole, towit: "You and each of you solemnly swear that in the case of the State of Texas against A. B., the defendant, you will a true verdict render, according to the law and the evidence, so help you God."

After the verdict of the jury had been returned, the jury discharged and the trial concluded, appellant for the first time, in his motion for new trial only, sought to take advantage of the fact that the jury had not been sworn as prescribed by our said procedure. The trial judge qualified his bill, which was only to the overruling of his motion for a new trial, as follows: 'The jury that tried this case were selected from the jury for the week; all of the jury had been sworn in as jurors for the week when empaneled as a jury; and when the first witness was placed on the stand, after the defendant had been arraigned, J. M. Knutson, one of the jurors, called the court's attention to the fact that the jury had not been sworn to try this case. The court replied that the jury had been sworn to try all cases, 'And I do not think it necessary to swear them to try this case, but if the State or the defendant desires it, it can be done.' I do not know that the defendant or his counsel, though both present, heard this conversation, but I do know that both of them noticed that the jury were not sworn before the jury brought in the verdict. No exception was taken to the jury not being sworn, but the defendant seems to have preferred to raise the question for the first time in a motion for a new trial, and the court has given him his choice."

Appellant now contends that the judgment should be reversed because the specific oath prescribed by the Code was not administered to the jury instead of the oath which was administered, and cites said articles of

our procedure, and Stephens v. State, 33 Texas Crim. Rep., 101. I do not hesitate to say that the proper procedure in this case would have been for the court to at least have sworn all the jury, if not each juror individually, to try this specific case. In the Stephens case, the question of waiver did not arise. Doubtless, the appellant in that case when the jury was made up must have demanded that the jury be sworn to try that individual case, and the court must have failed or refused to comply with his demand. If that had been done in this case, a different question would be presented.

In the case of Caldwell v. State, 12 Texas Crim. App., 302, the jury was selected from a special venire, and the court instead of swearing each juror individually as selected, as required by said article 698, waited till all twelve jurors had been selected and then to all together administered the oath as prescribed by said article 714. As stated by Judge Hurt, who wrote the opinion of the court in that case, the question was first raised by motion for new trial. The whole court, through Judge Hurt, said:

"There was no request made by the defendant to have the jurors sworn as selected, nor did the defendant object to their being sworn in a body. The first complaint is heard in the motion for new trial, and in his motion he does not state that he was not aware of these proceedings at the time they were had. These irregularities are now urged here as a ground for reversal. We are of the opinion that they come too late. If the defendant had demanded that the jurors be sworn as selected, and this demand had been refused, we would have been compelled to reverse the judgment. If an objection to their being sworn in a body had been interposed, a very nice question would be presented for our decision; but the defendant did neither.

"The question presented is this: Will this court reverse a judgment for these irregularities, when the defendant made no objection at the time, taking his chance of being acquitted by this jury thus sworn, and holding in reserve this matter to be used in his motion for new trial, and, on failure then, to be used in this court as ground for reversal of the judgment? We think not." In that case the death penalty was inflicted, and the case affirmed. This Caldwell case is precisely in point herein, is the law, and should be decisive against appellant.

It has always been held by this court that our statutes regulating the formation of a jury in a capital, or other felony case, are not mandatory but directory only. Murray v. State, 21 Texas Crim. App., 466; Jackson v. State, 30 Texas Crim. App., 664; Roberts v. State, 30 Texas Crim. App., 291; and a great many other cases.

In my opinion appellant clearly waived the administration to the jury of the oath prescribed by said articles 698 and 714 and accepted in lieu thereof the oath which was taken by the jury, doubtless at the time believing that the oath which was taken was amply sufficient. (Lyons v. State, 80 Texas Crim. Rep., 231, 189 S. W., 269.)

In a matter of procedure only, as this was, it is true in law, as it is

in mathematics, that "things which are equal to the same thing are equal to each other," or as reversely expressed "things which are equal to each other are equal to the same thing."

In the trial of every felony the judge is required by law to charge the jury in writing all the law applicable thereto, and the law requires that the jury must be governed by the law as so charged. The judge in this instance so charged them: "You are bound to receive the law from the court, which is herein given you, and be governed thereby." So it is the law, that the jury in making up their verdict must consider such evidence as is submitted to them under the rulings of the court during the trial—they can consider no other. In this case there were only two parties thereto, the State and the appellant. The case was between these two parties, and no other. The State was on one side, the appellant on the other. When each juror took the said oath administered, first copied above, he as completely and as absolutely solemnly swore to render a true verdict *in this case,* according to the law and the evidence, as if he had also taken each of said other oaths. There is no possible difference between the oath administered, and either of the others, in either substance or in effect. Neither could have been more binding on the juror than the other. Each was as equally binding on each juror as the other could possibly have been. The fact that the oath which was administered, in its face, specifically stated, that each juror solemnly swore to render a true verdict "according to the law as it may be given to you in charge by the court, and the evidence that may be submitted to you under the rulings of the court," was but the very thing, and only that, which either of the other oaths prescribed, and "in all cases," without doubt, embraced this specific case.

In his opinion Judge Davidson cites and quotes from a considerable number of Supreme Court decisions and the earlier decisions of this court to support his opinion. Not a single one of them cited for that purpose discuss, allude to or decide the question of waiver—not one. Neither of them are in point now on the question at issue here, and have all been superseded by our statute passed since they were rendered, for the very purpose of doing away with them and their effect. I refer to article 938, C. C. P. (old art. 904), which was approved March 3, 1897, page 11. That article prior to said act was: "The Court of Criminal Appeals may affirm the judgment of the court below, or may reverse and demand for a new trial, or may reverse and dismiss the case, or may reform and correct the judgment, as the law and the nature of the case may require." As that article then stood, the Supreme Court and this court had rendered said decisions cited by Judge Davidson and many others to the same effect, and holding that unless the record on appeal affirmatively showed that venue, the jury was properly empaneled and sworn, that defendant plead, the trial judge's charge was certified by him and filed by the clerk before it was read to the jury, was proven, they would and did reverse the case for any or all of these omissions. The Legislature by said Act of 1897 amended and

added to said article as follows: "But in all cases the court shall presume that the venue was proven in the court below; that the jury was properly empaneled and sworn; that the defendant was arraigned; that he pleaded to the indictment; that the charge of the court was certified by the judge and filed by the clerk of the court before it was read to the jury, unless such matters were made an issue in the court below, and it affirmatively appears to the contrary by a bill of exceptions, properly signed and allowed by the judge of the court below, or proven up by bystanders, as is now provided by law, and incorporated in the transcript as required by law." In section 3 of that act, and which was and is an important and necessary part of it, the Legislature declared: "The fact that the Court of Criminal Appeals is now in session, and many criminal cases now pending will be reversed, because there is no law in force authorizing said court to presume the regularity of the proceedings of the District and County Courts, creates an imperative public necessity and emergency that the rule requiring bills to be read on three several days, should be suspended, and it is hereby so enacted."

There can be no question but that by said Act and article, it is clear, plain and certain that an accused at the very time when the jury is completed must then and there demand that the jury be sworn in accordance with our procedure, because, if so the oath they did take was not sufficient, and if the judge should then refuse his demand, take his bill, and that it is too late after the trial is concluded for the first time in his motion for new trial to raise the point. (Scott v. State, 42 Texas Crim. Rep., 607; Belcher v. State, 71 Texas Crim. Rep., 646, and other cases cited therein; McGlosson v. State, 38 Texas Crim. Rep., 351.) This trial demonstrates all this. The judge thought the oath administered was all that was necessary and so told the juror. No doubt appellant and his attorney also thought so. The judge also then stated that if the defendant or State desired the jury to be sworn "to try this case," it could be done. But neither then desired it. By this trial appellant was acquitted of murder by the jury and can not again be tried therefor. If he had been acquitted altogether, there would be no question but that he could not again be tried at all in this case.

Again, our statute (art. 837, C. C. P.) expressly enacts: "New trials, in cases of felony, shall be granted for the following causes, *and for no other*"; then gives nine distinct grounds, neither of which embraces the ground herein set up. This article, in connection with article 938, excludes the idea that for the first time can an accused by motion for new trial, get a new trial on the ground sought by appellant.

It is entirely out of point to cite the Constitution and statute, that an accused is entitled to a jury trial, and can not waive a jury in a felony case. No one doubts this. But appellant had a jury trial, and there was no thought or suggestion in this record that he did not have. By the jury he was acquitted of murder, and convicted only of man-

slaughter. He should not be permitted to experiment with a jury, sworn as this one was, and if not acquitted entirely, get a reversal.

The judgment should be affirmed, not reversed. I respectfully dissent.