222 So.2d 872 (1969)
254 La. 100
STATE of Louisiana
v.
Louis FLANAGAN.
No. 49451.
Supreme Court of Louisiana.
May 5, 1969.
Dan A. Spencer, Shreveport, for defendant-appellant.
Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., J. Reuel Boone, Dist. Atty., Thomas A. Self, Asst. Dist. Atty., for appellee.
FOURNET, Chief Justice.
The defendant, Louis Flanagan, is appealing from his conviction on a charge by indictment with aggravated rape and his sentence to serve life imprisonment in the state penitentiary.
Counsel, both orally and in brief, concedes that no formal bills of exception were timely filed in the case at bar and therefore under the jurisprudence of this court "the appeal is limited solely to errors *873 patent on the face of the record"[1] and to his knowledge "there are * * * no such errors involved in this proceeding," and confined his argument solely to this court's refusal of defendant's application for writs of certiorari and mandamus[2] seeking to have this court order the trial judge to sign the bills of exception and made a part of this appeal that had been lodged here and set for hearing.
According to the record defendant was represented during the trial of the case by two attorneys of his own choice;[3] and his trial was conducted strictly in accordance with the rules and procedure prescribed for the trial of criminal cases by the Legislature of the State of Louisiana in adopting Act No. 310 of 1966, becoming effective January 1, 1967.
Following his conviction and sentence on May 10, 1969, the trial judge granted an appeal on defendant's written motion filed on May 24, 1968 pursuant to Article 914[4] and set the return date to this court as July 17, 1968 in conformity with Articles 915[5] and 919[6], giving defendant's counsel until July 1, 1968 for their presentation of the bills of exception relied upon for the reversal of his conviction in conformity with Article 845.[7] The time for presentation of the formal bills to the trial judge for his approval was extended upon the request of counsel for defendant to July 28, 1968 as provided in Article 845, whereupon the trial judge also extended the return day to July 28, 1968 as provided *874 in Articles 919 and 916.[8] Counsel without securing an order for further extending the return date of the appeal or time for filing the bills of exception placed some of the bills in the mail on July 30, 1968 to the clerk of court which the trial judge refused to sign when submitted to him for approval on August 2, 1968. The trial judge also refused to sign a motion and order for extension subsequently submitted to him for his approval, whereupon counsel applied to this court for writs of mandamus and certiorari seeking to compel the trial judge to grant defendant additional time within which to prepare and file bills of exception, which was denied by this court on January 20, 1969. We held in a per curiam opinion that the trial judge's "actions were correct because the extended return date had passed," and we also pointed out the defendant's appeal had already been lodged here and was set for hearing on February 28, 1969.
From the foregoing it is obvious that the trial judge was without right or authority to sign the bills of exception when presented to him on August 2 or grant the defendant's motion for additional time within which to do so, for under the express provisions of Article 916 (reported in footnote 8) the trial judge upon entering the order of appeal was divested of all jurisdiction and that of the appellate court attached, except the trial judge was reserved the limited jurisdiction, insofar as pertinent here, to "(1) Extend the return day of the appeal or the time for filing and signing the bills of exceptions and per curiae." It necessarily follows when July 28, the return date to which the appeal had been extended, expired the trial court lost all jurisdiction; in fact, the record had already been lodged here and set for hearing when the bills of exception were presented to the trial judge on August 2.
Ingenious counsel, relying on the recent decision of the Supreme Court of the United States in the case of Entsminger v. Iowa, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501, urges that the imputation of the dereliction of duty and ineffectiveness on the part of counsel to the defendant deprives him of his rights guaranteed under the Sixth and Fourteenth Amendments to the Constitution of the United States and, therefore, Article 920 as applied to this defendant is unconstitutional.
Clearly the argument lacks merit. While the Sixth Amendment[9] to the Constitution of the United States does guarantee an accused the right "to have the Assistance of Counsel for his defence," and the Fourteenth Amendment[10] guarantees the protection from unequal or discriminatory treatment of an accused, it appears in the record that defendant was represented by *875 two able counsel of his own choice who defended him vigorously throughout the eleven day trial in a competent and resourceful manner, reserving 108 bills of exception. Clearly, therefore, counsels' representation in this case cannot be considered merely perfunctory as held in Bell v. Alabama, 5 Cir., 367 F.2d 243, or a farce or mockery of justice as held in Grove v. Wilson, 9 Cir., 368 F.2d 414. And as above reflected the trial of defendant was conducted strictly in accordance with the law of Louisiana governing the procedure to be followed in all criminal cases.
A perusal of the case of Entsminger v. Iowa, supra, readily discloses it is inapposite from a factual as well as a legal standpoint. Therein the United States Supreme Court observing that the case concerned "the constitutional requirements which are binding on a State in the administration of its appellate criminal procedures with respect to convicted indigents seeking initial review of their convictions," pointed out in the opinion that the Iowa law provided alternate methods of appealing criminal convictions; the first method is on a "clerk's transcript" which is used in absence of a request on the part of counsel for the alternate method being a plenary review of the case wherein the appeal is on the complete record of the trial. Although appointed counsel in that case had secured an order to perfect a plenary appeal as he had been requested to do by defendant, he failed to file same; hence, the case was submitted to the appellate court on the "clerk's transcript" alone instead of the complete record pursuant to the order secured for a plenary appeal. In reversing the decision of the Supreme Court of Iowa the United States Supreme Court very aptly observed, "Such procedure automatically deprived him of a full record, briefs, and arguments on the bare election of his appointed counsel, without providing any notice to him or to the reviewing court that he had chosen not to file the complete record in the case." (Emphasis added.)
Although counsel conceded that there are no discernable errors appearing on the face of the record, we have, nevertheless, carefully inspected the same and fail to find any.
For the reasons assigned the conviction and sentence are affirmed.
BARHAM, Justice (dissenting).
I am in total agreement with the majority that we may not consider the bills of exception or any of the evidence and are required by Article 920(2) of the Code of Criminal Procedure only to inspect the "pleadings and proceedings" in this case to determine whether there is reversible error. After a careful review of the record, however, I find prejudicial and reversible error.
The detailed and lengthy minutes, which constitute the official record of the proceedings of the trial court, fail to disclose that the selected petit jurors were sworn.
On April 2, 1968, the prospective petit jurors called for service were administered the oath for their voir dire examination, and the court began the selection of a jury. Repeatedly the minute entries show that certain named persons were "selected and empanelled" to try the case.[1] On April 5, with the selected jury present in the court-room, *876 the bill of indictment and the defendant's plea thereto were read, opening statements were made, and the first witness was called. The proceedings continued until a verdict of guilty without capital punishment was rendered on April 11 and a sentence of life imprisonment pronounced on May 10.
The minutes do not state that any individual juror or the jury as a whole was sworn to try the case,[2] and the words "selected and empanelled" used in the minutes do not mean, or even imply, that the jury was sworn.[3] Thus the recordthe pleadings and proceedingsfails to show that the jury which convicted this defendant was sworn.
There are some holdings by the courts of other states that failure to swear the jury in a criminal case deprives the accused of his constitutional right to a trial by jury (Howard v. State, 80 Tex.Cr.R. 588, 192 S.W. 770, LRA 1917D 391; Commonwealth ex rel. Tate v. Banmiller, 393 Pa. 496, 143 A.2d 56; People v. Pelton, 116 Cal. App.Supp. 789, 7 P.2d 205), and it is uniformly held that the defendant is entitled to have the jury sworn. 50 C.J.S. Juries § 294. A diversity arises in other jurisdictions on the question of whether it must affirmatively appear in the record that the jury was sworn.
It has been consistently held in Louisiana not only that the jury must be sworn, but that the record must affirmatively show that the jury was sworn, and that lack of such a showing will be noted as error "patent upon the face of the record". State v. Prater, Man.Unrep.Cas. 307; State v. Gates, 9 La.Ann. 94; State v. Phillips, 28 La.Ann. 387; State v. King, 28 La.Ann. 425; State v. Douglass, 28 La.Ann. 425; State v. Calvert, 32 La.Ann. 224.[4] The general holding of these decisions is, as *877 stated in the Gates case: "We think that the record of conviction is defective, in not showing that the jurors who tried the issue were sworn. The original entry on the minutes enumerates the jury; but does not state that they were sworn, and this material fact cannot be supplied in a criminal case by the presumption of omnia rite acta, but should appear upon the record itself. * * *"[5]
The majority viewpoint in this country is in accord with the Louisiana jurisprudence. See Anno. LRA 1917D 399; State v. Mitchell, 199 Mo. 105, 97 S.W. 561, 8 Ann.Cas. 749; State v. Duff, 253 Mo. 415, 161 S.W. 683; State v. Berry, Mo., 195 S.W. 998; Hubbard v. People, 197 Ill. 15, 63 N.E. 1076; People v. Gray, 261 Ill. 140, 103 N.E. 552; (contra but not followed: People v. Blevins, 251 Ill. 381, 96 N.E. 214); Clendenny v. State, 154 Ark. 596, 243 S.W. 863; Commonwealth v. Robinson, 317 Pa. 321, 176 A. 908; Hines v. State, 238 Ala. 575, 192 So. 423; Brown v. State, 29 Fla. 543, 10 So. 736; Zapf v. State, 35 Fla. 210, 17 So. 225. For authorities which state the "general rule" and the "overwhelming weight of authority" (to which the Louisiana rule conforms), see 17 C.J. Criminal Law § 3401; 35 C.J. Juries § 498; 24A C.J.S. Criminal Law § 1732; 8 Ann. Cas. 750; Anno. LRA 1917D 399. A few states hold the minority view that affirmative proof of the swearing is not essential.[6]
The detailed and lengthy minutes before this court contain no showing whatever that the jury was sworn. The Louisiana statutory law specifically requires the swearing of the jury; there is no jury until the jurors are sworn. The term "selected and empanelled" is not synonymous with, nor does it imply, the swearing of the jury. The jurisprudence of this court is unwavering and is in accord with the majority rule that without an affirmative showing that the jury was sworn the verdict and sentence must be reversed. Therefore, on this appeal, which requests a reversal, the conviction and sentence should be annulled and the case remanded for a new trial.
Although the error discussed above is sufficient to dispose of the appeal, there is *878 another error apparent from a mere reading of the minutes which also would warrant reversal. While the law does not require that minutes be so complete and detailed as these in this case, they must be accepted as constituted and as approved by the trial judge. In perusing this official record of the proceedings this court cannot select and choose only what it might wish to notice, but must review any and all possible errors.
According to the minutes, the defendant moved in open court that all witnesses be removed and excluded from the courtroom during the trial except when called upon to testify. The State moved to have excepted from the exclusionary rule the chief prosecuting, the complaining witness in this, a rape case. As the minutes show, over the objection of the defendant the court permitted this witness to remain in the courtroom.[7]
Code of Criminal Procedure Article 764 provides: "Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice." (Emphasis supplied.) Although the comment of the redactors calls this article "a stylistic revision" of former R.S. 15:371, a comparison of the two articles and a consideration of the unambiguous language of the present article compel a different conclusion. Former R.S. 15:371 was a discretionary statute, and early cases interpreting it gave broad discretion to the trial judge in excepting certain witnesses from "the rule". However, even under the former law the judge's discretion was not absolute and unreviewable, and if it was arbitrarily or unreasonably exercised to the prejudice of the accused, this court would reverse. See State v. Carter, 206 La. 181, 19 So.2d 41, and State v. Lewis, 250 La. 876, 199 So.2d 907. In the Lewis case the State's only two witnesses were allowed to remain in the courtroom. In the Carter case the two complaining witnesses were excluded, but three other important witnesses were permitted to remain. In each case the conviction and sentence were reversed on the ground that to allow such State's witnesses to remain in the courtroom to hear and see what transpired while all others were excluded deprived the accused, for all practical purposes, of his right of cross-examination.
Under our present law it is mandatory for the judge to exclude the witnesses when motion is made by either the State or the defense, and modification of the exclusionary order is allowed for only one purpose: The order may be modified "in the interest of justice". To permit the complaining witness, who is also the principal witness against the accused, to hear the testimony of other witnesses, as occurred in this case, is "unquestionably a distinct advantage to the State and a disadvantage to the defendant". State v. Carter, supra. I cannot believe that the exception made by the trial court was in the "interest of justice" or that it served this end. It is apparent from an inspection of the official minutes that the defendant was thus deprived of free and effective cross-examination of the complaining witness, and that this is further prejudicial and reversible error.
I therefore respectfully dissent.
NOTES
[1] Code of Criminal Procedure Article 920 provides: "The following matters and no others shall be considered on appeal:

(1) Formal bills of exceptions that have been submitted to and signed by the trial court in accordance with Article 845, whether or not the bills of exceptions were made a ground for a motion for a new trial; and
(2) Any error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
Article 844 provides: "A. The appellate court shall consider only formal bills of exceptions which have been signed by the trial judge in conformity with Article 845. In a case where the death sentence has been imposed, the appellate court, to promote the ends of justice, may consider bills that have not been timely signed by the trial judge.
* * * * *."
See, State v. Robinson, 244 La. 199, 151 So.2d 371; State v. May, 239 La. 1069, 121 So.2d 82; State v. Richard, 230 La. 853, 89 So.2d 367; State v. Ware, 228 La. 713, 84 So.2d 56; State v. Honeycutt, 218 La. 362, 49 So.2d 610; State v. Roy, 217 La. 1074, 47 So. 2d 915 and numerous cases cited therein.
[2] See, State v. Flanagan, 253 La. 318, 217 So.2d 412.
[3] Since defendant's conviction and sentence one of his counsel has been released from the case.
[4] C.C.P. Art. 914"A motion for an appeal may be made orally in open court or by filing a written motion with the clerk. The motion must be made no later than fifteen days after the rendition of the judgment or ruling from which the appeal is taken. The motion shall be entered in the minutes of the court."
[5] C.C.P. Art. 915"When a motion for an appeal is made in conformity with Articles 912 and 914, the court shall order an appeal, and set the return date in the order. * * *."
[6] C.C.P. Art. 919"An appeal shall be returnable to the appellate court within not less than fifteen days nor more than sixty days from the date the order of appeal is entered. The trial court may extend a return date."
[7] C.C.P. Art. 845"The bills of exceptions reserved during the trial shall be submitted to the court and signed by it at any time prior to the granting of an order of appeal; except that if the bills of exceptions are not submitted and signed prior to the order of appeal the court shall fix a later date for the submission and signing of bills of exceptions, which extended date must be not later than the return day for the appeal. The court must sign the formal bills of exceptions, but may attach per curiam comments stating its reason for the rulings. If the court refuses to sign a formal bill of exceptions, its refusal may be reviewed on a writ of mandamus."
[8] Under the former provisions of LSA-R.S. 15:546, the trial judge had no right to extend the return date, jurisdiction having vested in this court, but the law now provides in Article 919, that the trial court may extend a return date and it is further provided in Article 916:

"The jurisdiction of the trial court is divested and that of the appellate court attaches, upon the entering of the order of appeal. Thereafter, the trial court has no jurisdiction over the matter except to:
(1) Extend the return day of the appeal or the time for filing and signing bills of exceptions and per curiae;
* * * * *."
[9] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor and to have the Assistance of Counsel for his defence."
[10] "Section 1* * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

* * * * *."
[1] The minutes of April 2 state:

"Thereupon, the following Jurors were duly [s]elected and empanelled to try this case, to-wit: "(1) Jack Wilson Eversull, Jr., and (2) Paul Timothy Lane.
"* * *
"Thereupon, the following Juror was duly selected and empanelled to try this case, to-wit: (3) Henry Phillips.
"* * *"
The minutes of April 2 and 3, in the same terminology, record that jurors nos. 4 through 12 and one alternate juror were "selected and empanelled" to try this case. The minutes of April 3 continue:
"And the Jury selected and empanelled to try this case is as follows: [The names of the 12 jurors and one alternate are here reinscribed.]
"* * *"
[2] Our law requires that the jurors be sworn. Code of Criminal Procedure Article 788 reads in part: "* * * When a prospective juror is accepted by the state and the defendant, he shall be sworn immediately as a juror. * * *" Article 789 concerns alternate jurors, and provides, among other things, that they be "called and impaneled" to sit and that they "shall take the same oath" as the principal jurors. Article 790 provides: "A juror shall be sworn to try the case in a just and impartial manner, to the best of his judgment, and to render a verdict according to the law and the evidence." (Emphasis supplied.)
[3] "Impanel": In English practice, "to impanel" signifies the entry upon a piece of parchment, termed a "panel", of the names of the jurors. In American practice, "to impanel" signifies the listing of jurors who have been selected to try a particular case. Black's Law Dictionary (DeLuxe ed.1944); Bouvier's Law Dictionary (Rawle's ed. 3rd rev.1914); 35 C.J. Juries § 485; 20 Words & Phrases (Perm. ed.), "impanel", p. 287; Webster's New International Dictionary (2nd ed. unabridged 1938); Random House Dictionary (Unabridged ed.1966-67); State v. Mitchell, 199 Mo. 105, 97 S.W. 561, 8 Ann.Cas. 749; State v. Hart, 331 Mo. 650, 56 S.W.2d 592; Rich v. State, 1 Tex.App. 206; Porter v. People ex rel. Cass, 7 How.Pr. (N.Y.) 441. "Impanel" does not mean or include the swearing of the jury, Zapf v. State, 35 Fla. 210, 17 So. 225; State v. Ostrander, 18 Iowa 435, 446. Louisiana jurisprudence treats "impaneling" as the selecting and listing of the jurors.
[4] Under our former law a reviewing court was required to consider "error patent on the face of the record" (former R.S. 15:558) even in the absence of bills of exception, and this term was defined by former R.S. 15:503 and the jurisprudence as error "discoverable by the mere inspection of the pleadings and proceedings and without any inspection of the evidence". This same requirement, in almost identical language, is incorporated in Article 920(2) of our present Code of Criminal Procedure. State v. Nicolosi, 128 La. 836, 55 So. 475, gave as one of the examples of errors patent on the face of the record "* * * the cases where the minutes did not show that the jury was sworn * * *", and cited State v. Gates; State v. Phillips; State v. King; State v. Douglass, and State v. Calvert, all of which I have cited above. It should be noted that these holdings (1854-1880) were made when the facilities for preparing a complete and accurate record of the proceedings were far more inadequate and inefficient than they are today.
[5] It cannot be presumed but must be affirmatively shown that the jury was in fact sworn. This rule does not conflict with the generally accepted legal theory, also followed in Louisiana, that once a jury is shown to have been sworn, the presumption arises that the oath was properly administered ("omnia rite acts"). See State v. Houck, 199 La. 478, 6 So. 2d 553, which held after a review of the minutes for "patent error" that a minute entry "`* * * whereupon the following named jurors were duly and legally called, selected and sworn'" fulfilled the requirement of an affirmative showing of an oath-taking. See also State v. Jones, 163 La. 51, 111 So. 492. In State v. Hoover, 203 La. 181, 13 So.2d 784, a bill of exception in connection with a motion for a new trial was taken to the trial court's refusal to amend the minutes which reflected that the jury was duly sworn. This court held that the minutes themselves were sufficient and, additionally, that the evidence taken upon the motion supported the minute entry. There is dictum in that case that failure to object in regard to the jury's oath is a waiver; but this dictum can only refer to defects in manner and form (to which "omnia rite acta praesumuntur" applies) and not to the total lack of oath, for such a statement is contrary to all Louisiana jurisprudence and to the overwhelming authority that the swearing of the jury cannot be waived by silence or presumed.
[6] The courts of some of these states, such as Texas, are bound by a statute of presumption. See Howard v. State, 80 Tex. Cr.R. 588, 192 S.W. 770, LRA1917D 391, citing the Texas Revised Code of Criminal Procedure 1911 Art. 938. South Carolina recognizes the general rule "* * * that the `record' of a criminal trial must affirmatively show that the jury was sworn, and if it does not, the conviction must be reversed". State v. Hollman, 232 S.C. 489, 102 S.E.2d 873. After citing the majority holdings, the court in that case reasoned that it could not apply the general rule because its rules for review limited its inspection to a "statement" made by the parties, which need not include a statement that the jury was sworn.
[7] The minutes further record that the defendant objected upon four occasions to this ruling, contending that he intended to impeach the complaining witness, that to except her from the rule infringed upon his right to cross-examine her, that this witness would hear testimony regarding matters about which she would later testify, and that she in fact testified concerning matters previously related by other witnesses on the stand.