**Melvin Dewayne HAWKINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–88–01389–CR.**

Court of Appeals of Texas, Dallas.

Dec. 19, 1989.

John D. Nation, Dallas, for appellant.

Yolanda M. Joosten, Dallas, for appellee.

Before HOWELL, BAKER and BURNETT, JJ.

## OPINION

BAKER, Justice.

A jury found appellant guilty of delivery of a simulated controlled substance, and the trial court sentenced him to ten years' confinement. In his first point of error, appellant contends that the trial court erred in failing to conclude that he established a prima facie case of racial discrimination in the State's use of peremptory challenges, and the trial court should have required the State to present its reasons for the peremptory strikes. The State contends that because appellant's objection was untimely, he was not entitled to a *Batson*[1] hearing. We agree with appellant, abate this appeal, and remand this cause to the trial court for further proceedings in conformity with this opinion.

The record reflects that following voir dire there was a brief recess at which time the attorneys exercised their peremptory strikes of the panel. Thereafter, appellant's counsel began discussing pretrial motions on the record before the court. The court then read the names of the individuals selected to sit on the jury and dismissed the remainder of the panel without objection from appellant. Appellant's counsel continued to request rulings on pretrial motions. After the court had ruled on all of appellant's pretrial motions, appellant objected to the jury as selected on the grounds that the State exercised peremptory strikes against prospective jurors on racial grounds. The court overruled this objection without stating a reason for the ruling. Subsequently, the court swore in

---

**1.** *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

the jury panel, and no further hearing was ever conducted.

Article 35.261(a) of the Texas Code of Criminal Procedure provides in pertinent part:

> (a) After the parties have delivered their lists to the clerk under article 35.26 of this Code and before the court has impaneled the jury, the defendant may request the court to dismiss the array and call a new array in the case.

Tex.Code Crim.Proc.Ann. art. 35.261(a) (Vernon 1989)[2]. Section (b) of article 35.-261 provides that if the court determines that the State challenged prospective jurors on the basis of race, the court shall call a new array in the case.

In determining whether appellant's *Batson* objection was timely, the question to be answered is the meaning of the phrase "impaneling the jury." Appellant contends that impaneling the jury means the identification *and* swearing of the individuals who will serve as the panel for the trial of the case. The State contends that the Texas Court of Criminal Appeals has held that in order for a *Batson* objection to be timely, the request must be made after the composition of the jury is known but before the jury is sworn *and* the venire panel is discharged. *See Henry v. State,* 729 S.W.2d 732, 736 (Tex.Crim.App.1987). The State argues that because appellant's objection was not made until after the venire panel was discharged, it was untimely.

■ We note that *Henry* was tried before the enactment of article 35.261. *See Brown v. State,* 769 S.W.2d 565, 568 (Tex. Crim.App.1989). Under the *Henry* rationale, appellant's objection was untimely because, although it was made before the jury was sworn, it was made after the rest of the venire panel had been discharged. However, the present case was tried after the enactment of article 35.261. Under appellant's interpretation of this article, because the jury had not yet been sworn, it was not "impaneled" for purposes of arti-

cle 35.261(a), and his objection was timely. We agree.

We are aware of no decisions which have resolved the question of what constitutes "impaneling" under article 35.261(a), presumably because the article is of such recent vintage. However, the Texas Court of Criminal Appeals has long held that impanelment of a jury is not complete until those who have chosen to serve have been both selected and sworn. In *Howard v. State,* 80 Tex.Crim. 588, 192 S.W. 770, 772 (1917), the jury was selected and sworn at the beginning of the week, but it was not sworn to try the particular case. In reversing, the court stated: "A jury cannot be said to be impaneled until it has been sworn." *Howard* relied on *Stephens v. State,* 33 Tex.Crim. 101, 25 S.W. 286, 286 (1894) where it was held that "[t]he clear intention of the Code is that a jury ... shall be sworn ... in the specific case and under the oath described.... Then only can a jury be said to be 'impaneled' in the case." *See also Rippey v. State,* 29 Tex. App. 37, 14 S.W. 448, 449 (1890).

In our view, the time limit for a *Batson* objection must be clear and understandable. For such purpose, the swearing of the jury is the most definitive point in the selection process that can reasonably be chosen as a *Batson* cutoff point. A jury selection process has not reached its logical conclusion until the oath has been administered. In our view, the swearing of the jury should signal the deadline for the presentation of a *Batson* challenge. We hold that within the context of article 35.261(a) of the Code "impaneling the jury" means both the selection and swearing of the individuals who will try the case and that a *Batson* objection made before the jury is sworn is timely for purposes of the article.

Next, we must determine whether appellant presented a prima facie case of purposeful discrimination so as to require the trial court to conduct a further hearing to determine if the State's peremptory challenges were racially motivated. In order to

---

**2.** All references to the Code are to Texas Code of Criminal Procedure article 35.261 (Vernon 1989).

invoke the protections set forth in *Batson,* a defendant must establish purposeful discrimination by showing that:

1. He was a member of a cognizable racial group;

2. The prosecutor had exercised peremptory challenges to remove from the venire members of the defendant's race (peremptory challenges constitute a jury selection practice which permits those to discriminate who are of a mind to discriminate); and

3. These facts and any other relevant circumstances raise an inference that the prosecutory used peremptory challenges to exclude the veniremen on account of their race.

*See Keeton v. State,* 724 S.W.2d 58, 65 (Tex.Crim.App.1987) (*Keeton I*); *Batson,* 476 U.S. at 96, 106 S.Ct. at 1722. A prima facie case represents the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true. The party with the burden of proof must produce at least this much evidence to avoid a finding that the allegation is not true as a matter of law. Once produced, however, the allegation must be found true unless it is contradicted, impeached, or rebutted by other evidence. In the context of a *Batson* hearing, such other evidence must include a racially neutral explanation by the prosecuting attorney and must be legally adequate to support a judgment in favor of the State. It is still, however, the burden of the accused to persuade the trial judge by the preponderance of the evidence that the allegations of purposeful discrimination are true in fact. *Dewberry v. State,* 776 S.W.2d 589, 590 (Tex.Crim.App.1989); *Williams v. State,* 767 S.W.2d 872, 874 (Tex.App.—Dallas 1989, pet. ref'd). The burden of establishing a prima facie case of disparate treatment is not onerous. *Dewberry,* 776 S.W.2d at 590.

Since we have held that appellant's *Batson* objection was timely, we will consider that the trial court's ruling was an implicit finding that appellant failed to establish a prima facie case of discrimination. We must determine whether the record supports such a finding. When the record is reviewed, the evidence must be considered in the light most favorable to the trial court's ruling and should not be disturbed if supported by the record. *Keeton v. State,* 749 S.W.2d 861, 870 (Tex.Crim.App. 1988) (*Keeton II*).

The record reflects that appellant is black. The State's two principal witnesses were not. After challenges for cause, thirty-five potential jurors were available to serve. Of these thirty-five jurors, eight were black. The State exercised all of its ten permissible peremptory challenges. The State used five of these challenges to strike black venire persons. The State did not exercise peremptory challenges on two black jurors who served on the jury. The eighth and final black venire person was struck by the defense. During voir dire, the prosecutor did not individually question the prospective jurors.

■ The record reflects that the first two prongs required by *Batson* are present. The remaining determination is whether the record reflects any other relevant circumstances that raises an inference that the prosecutor used the peremptory challenges to exclude the black venire persons on account of their race. It has been held that there are a number of illustrative types of evidence that can be used to raise the inference of discrimination. This evidence includes, but is not limited to, the following:

1. A pattern of strikes against black jurors on the particular venire, *e.g.,* five of ten peremptory challenges were used to strike black jurors.

2. The type and manner of the prosecutor's questions and statements during voir dire, including nothing more than desultory voir dire.

3. Circumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike blacks from the jury.

4. The State used peremptory challenges to dismiss all or most black jurors.

*Keeton II,* 749 S.W.2d at 867. Although the State used the same number of peremp-

tories for striking black jurors as it did for striking white jurors, the result is a disparate impact on the makeup of the jury selected to serve in the case. In other words, by using such a skewed number of strikes on black venire persons in relation to the total makeup of the panel, five of eight prospective black jurors were peremptorily struck with only two black jurors seated on the panel. Also, the prosecutor did not engage in questioning the jurors individually. In our view, the record fails to support the trial court's ruling, and we hold that appellant has established an inference of discrimination as required by *Batson* and *Keeton.* We sustain appellant's first point of error.

Because we have determined that appellant has established an inference of discrimination, the burden then shifts to the prosecutor, who must come forward with a racially neutral explanation for the strikes. *Keeton II,* 749 S.W.2d at 865. It is not for this Court to say whether there was racial motivation in the prosecutor's actions. *Batson* and *Keeton* require that such a determination be made by the trial judge. We abate this appeal and remand this case so that the trial court may conduct a *Batson* hearing. This hearing should be conducted in conformity with this opinion. Since we have held that the appellant has established an inference of racial discrimination, the trial court should require the State to come forward with racially neutral explanations for the use of its peremptory strikes. The trial court should then decide whether appellant has established purposeful discrimination, reduce that decision to writing, and enter its findings of fact and conclusions of law. The record of those proceedings, together with the results and the findings of fact and conclusions of law, are to be forwarded to this Court. *Miller–El v. State,* 748 S.W.2d 459, 461 (Tex.Crim.App.1988).