In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00124-CR


______________________________




CRAIG MERLIN WILD, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 21205




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 A jury found Craig Merlin Wild guilty of two counts of aggravated sexual assault of a child
and one count of indecency with a child. The court assessed punishment at life for each of the
assault counts and twenty years' confinement on the indecency count, along with a $5,000.00 fine
for each count. 

 On appeal, Wild challenges the factual (but not legal) sufficiency of the evidence on each of
the three convictions. He also raises an evidentiary point of error: that the court abused its
discretion in admitting hearsay evidence concerning Wild's threats of physical violence against the
complainant. We will address the two points of error presented. For the reasons stated below, we
affirm.

I. Factual Sufficiency

 A. Standard of Review

 In a factual sufficiency review, we review all the evidence in a neutral light and determine
whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and
preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. Roberts
v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Marshall v. State, 210 S.W.3d 618, 625 (Tex.
Crim. App. 2006); Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); Clewis v.
State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). In our review, we afford "due deference" to
a jury's determinations. Marshall, 210 S.W.3d at 625. "Although an appellate court reviewing
factual sufficiency has the ability to second-guess the jury to a limited degree, the review should still
be deferential, with a high level of skepticism about the jury's verdict required before a reversal can
occur." Roberts, 220 S.W.3d at 524.

 B. The Charges

 Wild was convicted of (1) aggravated sexual assault of a child by penetration of his daughter
T.W.'s (1) female sexual organ with his tongue on or about February 9, 2002 ("count one");
(2) aggravated sexual assault of a child by penetration of T.W.'s female sexual organ with his finger
on or about February 9, 2003 ("count two"); and (3) indecency with a child by touching part of
T.W.'s genitals on or about February 9, 2002 ("count three"). See Tex. Penal Code Ann. § 21.11
(Vernon 2003), § 22.021 (Vernon Supp. 2006). 

 C. The Evidence

 The jury heard T.W.'s testimony. The State also presented several witnesses to whom T.W.
had relayed the account of her abuse and played the recording of T.W.'s Children's Advocacy Center
(CAC) forensic interview, all of which substantially relayed the same story, with the one exception
that T.W. initially denied any penetration. Finally, the State presented an expert in sex-offender
behavior. Wild's defense included witnesses to impeach T.W.'s credibility in her changed allegations
and to present Wild's lack of opportunity to commit the offenses. 

 T.W. was eleven and twelve years old at the time of the charged assaults. T.W. testified that
the abuse started when she was nine or ten years old. She said Wild "started feeling" her with his
hand, specifically, "my lower half." Wild would join her in the shower naked and start to "feel on"
her everywhere with his hand. T.W. stated that Wild "started to lick me" when she was ten or eleven
years old. She stated that Wild licked "my private" and that both the licking and feeling occurred
more than once and that Wild would touch her, or make her touch him, "[a]lmost every single day." (2) 
Even after her parents divorced and T.W. only visited Wild, the abuse during the times she was with
Wild was still frequent. T.W. stated the incidents occurred in the bathroom and in Wild's bedroom. 

 T.W. stated that Wild touched her "[i]n my private areas," which is "[m]y vagina." She
testified that Wild "would just put his hand in my vagina and finger me." When asked to define
"fingered me," T.W. stated that means Wild "would mess with my vagina with his hand" and that
his hand would be both "[i]nside and out." T.W. stated that of all the times Wild touched her, he
penetrated her with his finger a minority of the time. T.W. testified that, in addition to using his
hand, Wild "would put his mouth up to my vagina, and use his tongue." Again, the tongue would
be both inside and outside her vagina. When asked if Wild penetrated her with his tongue every
time, T.W. said no; she was not sure if Wild penetrated her with his tongue most of the time or a few
times. 

 Michelle Griffith, a licensed professional counselor and the former CAC program director,
testified about her forensic interview of T.W. in which T.W., in addition to the acts described above,
stated that Wild washed her in the shower. Griffith stated that, in the interview, T.W. "motioned
with her hands how he would wash her in the private area." As to penetration, Griffith asked T.W.
in the forensic interview, "was his mouth inside your private or outside the private" and T.W.
answered "out." Griffith later asked, "Was there ever a time when it was inside your privates?" to
which T.W. answered, "No." Though Griffith did not remember asking T.W. if Wild's finger or hand
was inside T.W.'s private areas, Griffith stated that T.W. "never said anything was inside of her
during the interview" and when specifically asked, T.W. denied anything inside. Griffith stated that
T.W. three times denied penetration. Griffith explained that whether penetration occurred is "a
pretty substantial detail" that she would expect a complainant to tell the interviewer about, but
explained that the disclosure of sexual abuse is a process, not an event, and it is not unusual for a
child's story to change, even the next day. In her later testimony at trial, T.W. recalled that she had
said during the recorded interview that Wild penetrated her. 

 T.W.'s mother testified to Wild's controlling behavior (e.g., that Wild told her he wanted her
home with the kids and not working, that Wild recorded her and the kids' telephone calls, and that
neither she nor the kids went out to friends' houses). The State later presented Ed Waggoner--a
licensed professional counselor, licensed social worker, and licensed sex-offender treatment
provider--as an expert on sexual abuse. Waggoner presented a profile of behavioral and
psychological patterns of "regressed or opportunistic type offenders" and testified to various actions
a child molester might take to prepare, commit, and conceal his crime; he also profiled "victim
dynamics." Waggoner stated that power and control over a family member can be a technique used
by a sex offender to get victim cooperation. 

 The State also presented Carolyn Riddling, a sexual assault nurse examiner (SANE), who
testified to seeing T.W. in September 2004. Riddling took a history from T.W., but T.W. would not
let Riddling conduct a physical examination. Riddling testified to the report she made of T.W.'s self-reported history: "My dad started feeling up on me with his hand. He put his fingers inside me, and
he would use his tongue. We would be in his room, any time, just about everyday." On cross-examination, Riddling stated that T.W. had told her that Wild put both his finger and tongue "inside
of her." T.W. later testified that the SANE examiner asked only about penetration by a penis, and
never asked (and T.W. did not volunteer) about penetration by finger or tongue. Finally, the State
presented Jan Snow, a school counselor and licensed professional counselor, who testified that she
started counseling T.W. in September 2004. Snow testified to threats T.W. reported that Wild had
made and the anxiety T.W. has experienced. She testified to the role of the threats in T.W.'s delayed
outcry. 

 Wild's defense was that there was a lack of opportunity for Wild to have committed the
charged offenses and that T.W.'s story was fabricated. Wild's girlfriend, Jessica Duncan, testified
that, since the fall of 2003, she was present when Wild was with T.W. and that she saw no abuse;
Duncan also stated that, on occasions when she would leave the house to run errands or go to work,
T.W.'s demeanor when she returned would be normal. 

 Wild, through cross-examination of the State's experts, elicited extensive testimony regarding
false allegations of abuse. Wild focused on several aspects of T.W.'s allegations: that T.W. had
previously denied any abuse at all; that the abuse allegations arose in the context of her parents'
divorce; that T.W.'s social and work life was less desirable at her father's than her mother's house,
since she could go to the racetrack with her mother; that T.W. gave generalized and nonspecific
details of the abuse and that the details changed with each person T.W. told; that T.W. said on the
video "This is retarded" while the interviewer was out of the room; and that T.W. refused to have
a SANE examination. 

 Wild contended that T.W. had had numerous opportunities to report alleged sexual assaults
in the past, and had not only not done so, but had denied any abuse. Wild presented the testimony
of his attorney, Joe Moss, who had interviewed T.W. three times, including twice with no one else
present, during the divorce process. Moss stated that, although they had discussed custody, T.W.
never mentioned abuse. T.W. testified on cross-examination that she had not told of the abuse to
either the judge or the lawyers with whom she had spoken during her parents' divorce proceeding,
a period in which she now claims the abuse was ongoing. She also stated she had not told of the
abuse during multiple meetings with two separate Child Protective Services (CPS) caseworkers
during that period of time. T.W. stated that she believed the CPS workers were there to help her,
that she could be truthful with them, and that they would protect her if she told them that Wild was
abusing her, but that she did not tell them. 

 Ultimately, what Wild challenges is the jury's determination on the credibility of the
witnesses and the weight to be given to different versions of T.W.'s outcry of abuse. Our role is not
to "find" facts; the jury is the sole judge of weight and credibility of the witnesses, and it may accept
or reject any or all testimony of any witness. See Heiselbetz v. State, 906 S.W.2d 500, 504 (Tex.
Crim. App. 1995). Conflicts in the evidence are to be resolved by the jury. In doing so, it may
accept one version of facts and reject another, reject any of a witness' testimony, and reconcile
conflicts in the testimony, accepting or rejecting such portions thereof as it sees fit. See Penagraph
v. State, 623 S.W.2d 341 (Tex. Crim. App. [Panel Op.] 1981); Banks v. State, 510 S.W.2d 592 (Tex.
Crim. App. 1974). The jury was in the best position to make credibility determinations of this kind,
and we give deference to its determination, implicit in the verdict, that T.W.'s account of penetration,
among numerous acts of touching, was credible. 

 The record indicates that testimony supports the findings that Wild penetrated T.W.'s genitals
with both his finger and tongue. Additionally, the record supports that Wild touched T.W.'s
genitals--whether with finger, hand, or mouth--in numerous incidents, both in the bedroom and
bathroom, so as to support the indecency charge with a separate act. On our review of all the
evidence, and giving deference to the jury's determination of credibility and weight, we find the
evidence is factually sufficient, by the established standard, to support conviction on each of the
counts. The point of error is overruled.

II. Hearsay

 In Wild's final point of error, he complains that the court abused its discretion in admitting,
over a hearsay objection, testimony from Jan Snow that T.W. had said she "was threatened several
times . . . that she would deeply, deeply regret it if she ever told." We review the trial court's
decision to admit or exclude evidence under an abuse of discretion standard. See Green v. State, 934
S.W.2d 92, 101-02 (Tex. Crim. App. 1996); Montgomery v. State, 810 S.W.2d 372, 379-80 (Tex.
Crim. App. 1990). 

 Texas law generally requires a party to continue objecting each time inadmissible evidence
is offered. See Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). If the same
evidence is introduced from another source, without objection, the defendant is not in a position to
complain on appeal. Womble v. State, 618 S.W.2d 59, 62 (Tex. Crim. App. [Panel Op.] 1981); see
also Reyes v. State, 84 S.W.3d 633, 638 (Tex. Crim. App. 2002); Leday v. State, 983 S.W.2d 713,
718 (Tex. Crim. App. 1998); Robinson v. State, 985 S.W.2d 584, 587 (Tex. App.--Texarkana 1998,
pet. ref'd). 

 The record indicates that Wild did not object to the admission of the same or similar
testimony from several other witnesses. In fact, the first testimony on the subject came on Wild's
own questioning of T.W.'s mother, the State's first witness, when in response to whether T.W. had
stated at her first recounting of her abuse if Wild had told her she would regret telling, the mother
responded that T.W. told her about the threats at a later time. Both CAC interviewer Griffith and
T.W. herself testified without objection that Wild told T.W. she would deeply regret it if she told
anyone of the abuse. The record also contains no indication of objection when the jury watched the
CAC forensic interview recording in which T.W. made the statement. 

 Wild did not object to the same evidence coming from several other sources. He has failed
to preserve his complaint for review. We overrule this point of error.

 We affirm the judgment.




 Jack Carter

 Justice


Date Submitted: August 9, 2007

Date Decided: October 26, 2007


Do Not Publish


1. To protect the victim's identity, we refer to her by her initials.
2. Wild did not request that the State elect the particular act relied on as the basis for each
charged offense. See, e.g., Dixon v. State, 201 S.W.3d 731, 733 (Tex. Crim. App. 2006). 


![endif]-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-08-00195-CR

                                                ______________________________

 

 

                             WANDA HIGBEE SCHINDLEY,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                                  On Appeal from the County Court

                                                           Franklin County, Texas

                                                            Trial
Court No. 11134

 

                                                                        
                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                          Opinion by Justice Carter








                                                                   O P I N I O N

 

            Wanda
Higbee Schindley appeals from her conviction for misdemeanor driving while
intoxicated.  On September 4, 2008,
Schindley was convicted, and the jury assessed punishment at 120 days
confinement probated for two years and a $1,000.00 fine.  This case has had a wandering path through
the legal system after Schindleys retained appellate attorney failed to seek
preparation of a record to pursue her initial appeal, followed by a dismissal
by this Court and its ultimate remand back to this Court by the Texas Court of
Criminal Appeals, with directions to abate for a hearing on (among other
things) her indigency.  The trial court
held a hearing and found Schindley not indigent.  She appealed to this Court, and after
briefing, on September 29, 2009, we reversed the trial court and directed that
she be appointed counsel and provided a free copy of the reporters record.  After multiple extensions and an order to the
court reporter from this Court, a free record was provided, and now, finally,
over a year and a half after the trial, her appeal is ripe for review.  

            Counsel
has filed a brief in which he contends in a single point of error that the
trial court committed reversible error by failing to administer the proper jury
oath required by Article 35.22 of the Texas Code of Criminal Procedure after
the panel was selected.  Tex. Code Crim. Proc. Ann. art. 35.22
(Vernon 2006).  Counsel points out that
there is authority holding that the complete failure to administer a jury oath
renders the verdict a nullityand that it is reversible error that may be
raised for the first time on appeal.  See White v. State, 629 S.W.2d 701, 704
(Tex. Crim. App. 1981) (citing Howard v.
State, 80 Tex. Cr. 588, 192 S.W. 770 (1917)); Brown v. State, 220 S.W.3d 552, 554 (Tex. App.Texarkana 2007, no
pet.).

            The
reporters record as originally presented did not contain any indication that
the jurors had been sworn.  After the
brief was filed, the State contacted the court reporter, who acknowledged that
she had accidentally omitted part of the proceedings.  She then prepared a supplemental record which
contains the discourse in which the empaneled jurors were sworn in by the court
prior to the commencement of trial.  No
error has been shown.

            We
affirm the judgment.

 

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          June
9, 2010

Date Decided:             June
10, 2010

 

Publish

 

 

OPINION
ON MOTION FOR REHEARING

 

            This
Court has now been presented with two documents styled as a Motion for
Rehearing, one from counsel, and the other prepared pro se by the appellant,
Wanda Higbee Schindley.  We first note
that the document filed by Schindley is not, despite its title, a motion for
rehearing.  A motion for rehearing is, by
definition, a request for this Court to reconsider its opinion.  This motion does not attack the opinion of
this Court in any respectsave only seeking a different conclusion.  Examining it for its content as we are
required to do, it is apparent that this document is an attempt to file a pro se
brief raising six new points of error.[1]

            There
is no right to represent oneself in part, while also being represented by
counsel; there is no general right to hybrid representation in Texas.  Robinson v. State, 240 S.W.3d 919, 922
(Tex. Crim. App. 2007); Turner v. State, 805 S.W.2d 423, 425 n.1 (Tex. Crim. App. 1991); Williams v.
State, 946 S.W.2d
886, 892 (Tex. App.Waco 1997, no pet.). 
Appellants are not allowed to have hybrid representation on appeal.  Ex parte Taylor, 36 S.W.3d 883, 887 (Tex.
Crim. App. 2001).  Thus, Schindley has no
right to file documents with this Court while represented by counsel.  This Court may and should disregard pro se
motions presented by a defendant represented by counsel.  Robinson, 240 S.W.3d at 922. 


            Even
if we had been timely requested to allow hybrid representation, and had chosen
to permit Schindley to file her own brief, the time for appellant to file a
brief in this case ended three months past. 
The record was filed on January 12, 2010, and appellants brief was
filed March 17, 2010.  The States
reply brief was filed May 19, 2010, and the case was submitted to the Court
pursuant to Tex. R. App. P. 39.8
on June 9, 2010.  Our opinion issued June
10, 2010.  

            One
of Schindleys major complaints is that her appointed attorney did not use the
points and arguments that she provided for him.  Because this seems to be a recurrent theme
both in this case and other appeals recently presented to this Court, we will
address it.  We have received briefs in
other cases recently in which the attorney felt that it was necessary to
address points of error suggested by his or her client.  Counsel may choose to do this, but is not
required to do so.  We direct the
attention of Schindley and the bar to the Rules of Professional Conduct, which
set out and explain the obviousthat the function of an attorney to the legal
system is to act as the expert advocate representing his or her client.  Tex.
Disciplinary R. Profl Conduct preamble § 2, reprinted in Tex. Govt Code
Ann. tit. 2, subtit. G app. A (Vernon 2005).  An attorney is to abide by a clients
decisions in a criminal case, after consultation, about the plea to be entered,
whether to waive jury trial, and whether the client will testify.  In all other respects, it is the duty of
counsel to analyze the case and to determine and present what (if any)
nonfrivolous issues may exist on appeal. 
Tex. Disciplinary R. Profl
Conduct 1.02, reprinted in Tex. Govt Code Ann. tit. 2, subtit. G
app. A (Vernon 2005).  

            Further,
if counsel presents issues to this Court, even noted as being requested by the
defendant, that are frivolous, counsel is breaching his or her duty to this
Court.  Standards
for Appellate Conduct, Texas Rules of Court (State) 42527 (West 2010).[2]  

            On
rehearing, counsel states that on June 3, 2010 (after all briefing was
complete, and less than a week before submission), he contacted the court
reporter and requested supplementation of the record to include the voir dire
of the jury panel, and any hearing on Defendants Motion to Suppress.  The court reporter responded by stating that [a]fter
a diligent search of my records, I did not report a hearing on Defendants Motion
to Suppress on the referenced Cause . . . .  We have reviewed the record again and find
nothing in this record to indicate that any such hearing was ever conducted in
this case.  

            We
have also contacted the court reporter, who explained that she did not have a
record to transcribe of the voir dire, stating, 

I do not have a complete voir dire.  I tried, could not hear.  I could not report what I could not
hear.  Ms. Schindley insisted on
performing her voir dire herself.  She
was asked to speak up several times, but to no avail.  

 

No transcription of the voir dire
is available, and none will be.  

            This
Court has already addressed situations where court reporters have failed to
record proceedings.  This Court, the
Eastland and the Corpus Christi Courts of Appeals have held the court reporter
has a duty to record all proceedings unless a party expressly waives his or her
right to have a court reporter record the proceedings.  Rittenhouse
v. Sabine Valley Ctr. Found., Inc., 161 S.W.3d 157, 161 (Tex.
App.Texarkana 2005, no pet.); Smith v.
State, 114 S.W.3d 66, 70 (Tex. App.Eastland 2003, pet. refd); Tanguma v. State, 47 S.W.3d 663, 670
(Tex. App.Corpus Christi 2001, pet. refd), overruled in part by Valle v.
State, 109 S.W.3d 500, 50809 (Tex. Crim. App. 2003) (objection still
required to preserve error for appellate review).[3]  The failure of the court reporter to transcribe
the proceedings constitutes error in violation of Rule 13.1(a) of the
Texas Rules of Appellate Procedure, but the Texas Court of Criminal Appeals has
determined that unless such error is properly preserved, the appellate court
may not review it.[4]
 Valle,
109 S.W.3d at 50809.  

            Rule
33.1 provides:  (a) In General.  As a prerequisite to presenting a complaint
for appellate review, the record must show that:  (1) the complaint was made to the trial court
by a timely request, objection, or motion . . . .  Tex.
R. App. P. 33.1(a).  The record
contains no indication that any objection was made to the failure of the court
reporter to record the proceedings. 
Since such error may not be considered on appeal in this case, Schindleys
argument about the absence of a transcription of the voir dire examination
provides no basis upon which to grant a rehearing. 

            We
overrule the motion for rehearing.

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date: 
August 11, 2010

 

Publish

 











[1]See Tex.
R. Civ. P. 71; State Bar of Tex.
v. Heard, 603 S.W.3d 829, 833 (Tex. 1980).





[2]An
attorney, whether appointed or retained, is under an ethical obligation to
refuse to pursue a frivolous appeal.  McCoy
v. Court of Appeals of Wisc., Dist. 1, 486 U.S. 429, 435 (1988).





[3]Brossette v. State, 99 S.W.3d 277, 284
(Tex. App.Texarkana 2003, pet. dismd, untimely filed). 

 





[4]In
so holding, we found ourselves in disagreement with courts of appeals which
have held that Rule 13.1(a) was in conflict with Tex. Govt Code Ann. § 52.046(a), and that the statute
controlled.  Nabelek
v. Dist. Attorney of Harris County, 290 S.W.3d 222, 231 (Tex. App.Houston [14th
Dist.] 2005, no pet.); Polasek v. State,
16 S.W.3d 82, 8889 (Tex. App.Houston [1st Dist.] 2000, pet. refd); see Garza v. State, 212 S.W.3d 503, 505
(Tex. App.Austin 2006, no pet.); Langford
v. State, 129 S.W.3d 138, 139 (Tex. App.Dallas 2003, no pet.).